UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DOUGLAS A. GUILMETTE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 3:16-CV-716-JD-MGG |
| | ) |
| N. HENRY, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

Douglas A. Guilmette, a prisoner without a lawyer, is proceeding on a claim that, while housed at Indiana State Prison (ISP), N. Henry used excessive force against him on January 7, 2016, in violation of the Eighth Amendment. (ECF 4.) The defendant moved for summary judgment on the basis that Guilmette failed to exhaust his administrative remedies before filing suit as required by 42 U.S.C. § 1997e(a). (ECF 17.)

Preliminary Matters

Both Guilmette and defendant have filed numerous motions related to defendant's motion for summary judgment. Defendant filed a motion to strike portions of Guilmette's response and the supporting affidavits. (ECF 22.) Guilmette filed two separate motions requesting that the court consider a document titled "Grievance Process" in conjunction with his response. (ECF 26 and 28.) And, Guilmette filed a motion to strike the affidavits and statements of Vickie Long. (ECF 29.) Lastly,

Guilmette asks the court to consider what he says is newly obtained evidence of his mental impairment. (ECF 32.)

Defendant's motion to strike (ECF 22) will be granted in part and denied in part. Defendant seeks to strike the hearsay statements attributed to ISP caseworker Jaquline Mayes and included in both Guilmette's response brief and the affidavit of William Wilson. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). While Mayes' statements may be inadmissible in their current form, Rule 56(c) permits the consideration of evidence inadmissible in its present form so long as it could be presented in an admissible form at trial. Therefore, at this stage of the proceedings, there is no need to strike the statements attributed to Mayes.

Defendant also asks that the affidavit of "M. Williams (IDOC c/o)" submitted by Guilmette be stricken. The affidavit of M. Williams states only that the affiant placed a white envelope into the superintendent's mailbox for Guilmette on or about January 12th. Defendant asserts that this affidavit is forged, and supports that assertion with affidavits from Pamela James and Matthew Williams. Pamela James, an Administrative Assistant at ISP, indicates that there were two individuals named M. Williams employed at ISP in January of 2016. She further indicates that Guilmette was placed in the IDU, a restricted housing unit, on January 7, 2016, and was housed there on January 12, 2016. Only one of the two M. Williams's employed by ISP, a correctional officer, would have had contact with Guilmette in the IDU. The other M. Williams was a

program director that worked in a general population program. Matthew Williams' affidavit indicates that he worked as a correctional officer at ISP in the unit where Guilmette was housed in January of 2016, but the affidavit Guilmette produced was not executed by him. This is a very serious allegation. If true, it could warrant sanctions, including dismissal of this action. *See Bentz v. Godinez*, No. 17-CV-315-MJR, 2017 WL 5532445, *3 (S.D. Ill. Nov. 17, 2017)("The Seventh Circuit has held, however, that a dismissal with prejudice is an appropriate sanction for lying to the court… because no one needs to be warned not to lie to the judiciary.")(citing *Ayobi v. Dart*, 640 Fed. Appx. 524, 528-29 (7th Cir. 2016). Nonetheless, the affidavit in question here is both duplicative of Guilmette's own statement and irrelevant to any issue currently before this court.[1] The motion will be stricken because it is irrelevant, but Guilmette is cautioned that lying to the court will not be tolerated and, if substantiated, will result in sanctions.

Guilmette's Motion to Amend Plaintiff's Brief (ECF 26) and Motion to Admit into Evidence (ECF 28) will be denied. These motions each ask the court to consider a document titled "Grievance Procedure" as part of Guilmette's response brief. But defendant asserts and Guilmette concedes that the document is not an ISP document. Accordingly, it is not relevant to the matters to be determined by this court.

Guilmette's motion to strike the affidavits and statements of Vickie Long will be denied. (ECF 29). Long is a grievance specialist at ISP. She has provided affidavits

---

[1] Guilmette's letter to Superintendent Neal, which M. Williams allegedly placed in Neal's mailbox on January 12, 2016, just five days after the incident, was not an attempt to file a grievance, either informal or formal. Rather, Guilmette asked that his medical co-pay be waived so he could get treatment for his injuries, and he asked for a copy of video footage of the January 7, 2016, incident. (ECF 17 at 14-16.)

3

explaining ISP's grievance procedures and asserting that Guilmette did not file a formal grievance against the defendant. Guilmette claims that, because Long is one of the individuals that impeded his efforts to file a grievance, her statements should be stricken. Guilmette has not argued that Long lacked personal knowledge of the matters in her affidavits and has not otherwise challenged the content of the affidavits. He claims only that she has a conflict of interest, and while that may affect her credibility, it is not a basis for striking Long's affidavits.

Guilmette's motion to admit evidence of his mental impairment (ECF 32) will also be denied. Guilmette claims that he just received evidence from his therapist showing that he "has a mental defect which could have and did effect his judgment concerning following and understanding complicated bi-rules after being thwarted [sic] initially from filing his grievance." (*Id.*) But the only evidence that Guilmette has provided is a document containing very basic information about bipolar disorder and a single page documenting a visit with a medical provider that shows he was diagnosed with bipolar disorder on May 13, 2014. The documents Guilmette points to simply do not say what he claims they say. Furthermore, although Guilmette categorizes this evidence as new, he has not explained when he became aware of his bipolar diagnosis or why he was unable to tell the court about his diagnosis or its impact on his ability to follow ISP's grievance procedures sooner. Nonetheless, as discussed below, there are material factual disputes that preclude the entry of summary judgment in favor of defendant. If defendant chooses to pursue his affirmative defense by requesting a hearing on the issue of exhaustion, Guilmette will have an opportunity to subpoena his

4

therapist and introduce evidence of his mental impairment and its impact on his ability to understand and comply with the grievance policy.

Summary Judgment Motion

Turning to the merits, summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Nevertheless, a party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The Prison Litigation Reform Act ("PLRA") prohibits prisoners from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The U.S. Court of Appeals for the Seventh Circuit has taken a "strict compliance approach to exhaustion." *Id.* Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the

prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

Nevertheless, inmates are only required to exhaust administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears "on paper," but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. When there are disputed issues of fact pertaining to whether the plaintiff exhausted or was precluded from doing so, the court is required to hold an evidentiary hearing to resolve those disputes. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

Here, Guilmette was incarcerated at ISP during all times relevant. (ECF 17 at 4.) It is undisputed that the prison had a grievance policy consisting of a three-step process for resolving disputes. First, an offender must attempt to resolve the dispute informally. If unsatisfied with the outcome, he may then file a formal grievance. And, if unsatisfied with the outcome of the formal grievance, he may appeal that decision. (ECF 17 at 11.)

Guilmette requested and received an informal grievance form from Mayes shortly after the January 7, 2016, incident. (ECF 20 at 3.) According to Guilmette, he filed his informal grievance against Sgt. Henry on January 9, 2016, but a week later the grievance form was returned unanswered. (*Id.* at 3 and 8.) Guilmette mailed the grievance form a second time. (*Id.* at 3-4.) He saw Mayes several times after this, and she assured him she was in control. (*Id.* at 4.) About two weeks later, he got the form back again. (*Id.* at 4.) At this point, he confronted Mayes about the grievance and she told him that she was aware of the incident but would not talk to Sgt. Henry about it because Guilmette was at fault. (*Id.*)

Guilmette then wrote to Howard Morton, the executive assistant, and attached a copy of the informal grievance to his request slip. (*Id.*) Thereafter, Mayes brought the request slip and the informal grievance back to Guilmette and said "if you go over my head after I have already made a decision your [sic] going to end up back in I.D.U. not mental health." (*Id.*)

Next, Guilmette went to D. Roberts, the unit team manager. (*Id.*) He again asked for an informal grievance form. On March 15, 2016, he filed an informal grievance against Mayes, Morton, and Long. (*Id.* at 4 and 10.) In this informal grievance, Guilmette made three complaints: (1) that Mayes refused to allow him to file his informal grievance against Sgt. Henry on March 15, 2016; (2) that the informal grievance had been returned unanswered many times; and (3) that Mayes, Morton and Long each refused to help. (*Id.* at 10.) The March 15, 2016, informal grievance was returned with a response indicating that it was untimely. (*Id.*) Guilmette disagreed that the grievance

7

was late and asked Roberts for a formal grievance form. (ECF 20 at 4-5; ECF 17 at 23.) Guilmette completed the offender grievance form. (ECF 20 at 5 and 11.) In it, he claimed that Mayes refused to allow him to file his informal complaint against Sgt. Henry for the January incident and that Morton and Long each refused to help him. He asked that he be permitted to complete the grievance process against Sgt. Henry. (*Id.*) A week later, Mayes brought the formal grievance form back and slammed it on the table, stating that "neither she, Vicky Long, or Howard Morton were going to file that grievance" and that Guilmette was "not going to be able to file a grievance against a correctional officer when [he] was at fault." (*Id.* at 5 and 12.) ISP records do not reflect that this formal grievance was ever filed. (ECF 17 at 34.)

The parties agree that Guilmette did not file a formal grievance concerning the allegations at issue in this lawsuit. (ECF 20 at 3.) The issue before this court is whether that remedy became unavailable to Guilmette due to a prison employee's failure to respond to his properly filed informal grievance or other affirmative misconduct. *See Dole*, 438 F.3d at 809. The facts before this court demonstrate that there is a genuine dispute of material fact regarding whether Mayes' conduct rendered the prison grievance system unavailable to Guilmette.

While ISP's grievance policy provides that Guilmette could file a formal grievance ten business days after he sought informal resolution of his complaint, even without receiving a response, according to Guilmette, Mayes' actions prevented him from filing his formal grievance. Guilmette alleges that, after he mailed the informal grievance form a second time, Mayes told him she was in control of the situation. This

could have reasonably led Guilmette to believe that there was nothing further for him to do. This is especially true here, because defendant has not demonstrated that Guilmette received a copy of the grievance policy in effect at the time. Defendant demonstrated that Guilmette received a copy of ISP's grievance policy on October 8, 2013, but the grievance policy defendant relies upon became effective on April 5, 2016. (ECF 17 at 9 and 36.) There is no evidence before the court indicating that Guilmette received a copy of the policy that defendant now relies upon and no indication whether the April 5, 2015, policy altered any of the relevant provisions of the policy. Furthermore, Guilmette asserts that his bipolar disorder was so severe that it rendered him unable to understand the intricacies of the grievance policy. (ECF 32.) The grievance policy provides that:

> The facility shall ensure that a mechanism is in place in each housing unit or Unit Team to ensure that offenders who are illiterate, who do not speak or write English fluently, or who have medical or psychological disabilities have assistance in preparing and submitting a grievance form in accordance with this policy and administrative procedure.

(ECF 17 at 25.) It is unclear whether prison staff were aware of Guilmette's diagnosis at the relevant time. But, it is also unclear if this portion of the policy was complied with, and, if so, whether the mechanisms by which an offender with a psychological disability could get help were described to Guilmette. The policy itself (even assuming Guilmette received a copy) does not describe the particulars of any such procedure, just the need for a procedure to exist.

Based on Guilmette's version of events, Mayes' other comments reveal that, at best, she had no inclination to assist Guilmette, and at worst, she was willing to retaliate

9

against him for pursuing his grievance and sabotage his efforts to exhaust his administrative remedies. Approximately three weeks after the incident (and likely after the time for bringing a formal grievance had passed), Mayes told Guilmette that she would not talk to Henry about the incident because Guilmette was at fault. (ECF 20 at 4.) Mayes also told Guilmette that "if you go over my head after I already made a decision your [sic] going to end up back in I.D.U, not mental health." *(Id.)* And, when, in March, he ultimately did attempt to file a formal grievance against Mayes, Morton, and Long for their handling of his grievance against Henry, the grievance form was not filed. Instead, it was returned by Mayes who slammed it on the table and told Guilmette that he was "not going to be able to file a grievance against a correctional officer when [he] is at fault." (ECF 20 at 5.)

Additionally, it is not clear Guilmette could successfully navigate the grievance system without Mayes' cooperation. Guilmette was placed in IDU the same day that the incident occurred and it appears that he remained in either IDU or NSB (another restricted housing unit) for most if not all of the relevant time period, Mayes was the caseworker for both of these units. When Mayes did not respond to his timely filed informal grievance, Guilmette sent his informal grievance to Morton, but it was Mayes that returned to Guilmette with the grievance. And, when Guilmette obtained a formal grievance form from Roberts and attempted to file it, it was again returned by Mayes. Defendant has produced no evidence showing that Guilmette had either an opportunity or obligation to circumvent Mayes while housed in IDU or NSB.

If it is true that Mayes' actions effectively prevented Guilmette, an inmate in a restricted housing unit suffering from mental illness who may not have been provided with a copy of the relevant grievance policy, from filing a formal grievance, then Guilmette's failure to appeal his grievance does not amount to a failure to exhaust his administrative remedies. *See Woodford*, 548 U.S. at 102 (inmates only required to exhaust administrative remedies that are available to them). Accordingly, summary judgment cannot be granted based on the present record. The motion will be denied. Unless the defendant elects to withdraw his exhaustion defense, it will be necessary to hold a hearing pursuant to *Pavey* to resolve the factual disputes identified in this opinion.

For these reasons,

(1) Defendant's Motion for Summary Judgment (ECF 17) is DENIED;

(2) Defendant's Motion to Strike (ECF 22) is GRANTED IN PART and DENIED IN PART as explained more fully above;

(3) The affidavit of M. Williams (ECF 20 at 15-16) is STRICKEN;

(4) Guilmette's Motion to Amend Plaintiff's Brief (ECF 26) is DENIED;

(5) Guilmette's Motion to Admit into Evidence (ECF 28) is DENIED;

(6) Guilmette's Motion to Strike (ECF 29) is DENIED;

(7) Guilmette's Motion to Admit Newly Obtained Evidence into Record (ECF 32) is DENIED;

(8) Defendant is ORDERED to file a notice advising the court whether he elects to withdraw his exhaustion defense or proceed with a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) by **March 2, 2018;** and

(9) Defendant is CAUTIONED that, if a *Pavey* hearing is not requested by that date, the affirmative defense of exhaustion of administrative remedies will be waived.

SO ORDERED on February 16, 2018.

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT